**UNITED STATES of America, Plaintiff,**

v.

**TRUSS TITE, INC., Alvin State Bank, Alvin State Bank as the Administrator of the Estate of Terry A. Newman, Defendants.**

**Civ. A. No. 66–G–110.**

United States District Court
S. D. Texas,
Galveston Division.

March 11, 1968.

---

Joel Kay, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Olin G. Wellborn, Wellborn, Britt & Kelly, Alvin, Tex., for Alvin State Bank.

### MEMORANDUM AND ORDER

NOEL, District Judge.

This is an often litigated area of the law in the United States District Courts

—the battle of priorities between a tax lien of the United States and a competing lien of another party. This action was commenced as a suit whereby the government sought to obtain judgment against a taxpayer, Truss Tite, Inc., for employment taxes due and owing the United States. Default judgment was granted and entered on October 10, 1967, as to the taxpayer. Alvin State Bank, as the administrator of the estate of Terry A. Newman, was also named as a defendant in order that a determination could be made as to the priority of competing liens between the United States and the bank. The government and the bank have agreed to all the facts involved in the suit in a pre-trial stipulation entered on May 29, 1967. The parties further agreed that there was only one issue of law remaining to be determined by the court. Both parties having filed briefs and reply briefs, the case is now before the court for decision.

The relevant facts as agreed by the parties are as follows: Defendant Truss Tite, Inc., entered into a one-year lease agreement with the Alvin State Bank, in its representative capacity, in March 1964. The lease contract provided, *inter alia,* that the lessor would have a lien as security for the rent upon all the personal property and fixtures on the demised premises. By November 10, 1964, Truss Tite was in default, and has failed to pay any further amount to date.

In December 1964, the government made an assessment against Truss Tite (hereinafter called taxpayer) for past due taxes. Notice of federal tax lien was filed on December 11, 1964. In January 1965, the bank filed suit against the taxpayer for the past due rent and breach of the lease agreement. In February, the plaintiff made a further assessment and filed a second notice of federal tax lien.

In March 1965, the taxpayer filed a general denial in the suit the bank had brought against it. In late April, with the approval of both a major stockholder of taxpayer and the Internal Revenue Service, the bank sold personal property located in the leased premises for a total amount of $3,203.02. This is the fund over which both the government and the bank claim priority. The bank is holding this sum in escrow pending the outcome of this suit.

■ In addition to the above facts, the parties also stipulated that, "The following issue of law, *and no others,* remains to be determined by the court herein:

Whether the federal tax liens for the third and fourth quarters of 1964 having a total unpaid balance of $3,275.49, plus interest as provided by law, are entitled to priority to the *contractual* landlord's lien contained in the lease agreement between the Alvin State Bank, as administrator of the estate of Terry A. Newman, and Truss Tite, Inc., as to the fund of money resulting from the sale of certain personal property located on the leased premises at the time of the default in the lease agreement."[1] (Emphasis added.)

Section 6321 of the Internal Revenue Code of 1954 provides for the imposition of a tax lien upon all property and rights to property in which a delinquent taxpayer has an interest. It arises as a secret lien, effective from the date of the assessment of the tax. In order to protect certain creditors, Congress passed Section 6323. This section requires that the government file notice of the lien before

---

1. By electing to rely on its contractual landlord's lien "and no others," the bank waived whatever rights it may have had under the statutory landlord's lien. Tex. Rev.Civ.Stat.Ann. Art. 5238 (1889). However, it is extremely doubtful that this lien could have priority over the federal tax liens unless it was reduced to judg-ment. Cf. United States v. Scott & Gregg Real Estate Co., 229 S.W.2d 888 (Tex. Civ.App.1950), reh. den., err. dism'd. See Annot. 2 L.Ed.2d 1853 (1958); 36 Tex.Jur.2d § 186. See also, Federal Liens and Priorities, 77 Yale Law Journal, 228, 230, n. 20 (1967).

it is valid against purchasers, holders of security interests, mechanics lienors, or judgment lien creditors.[2]

■ The federal courts look to state law to determine the nature of a party's interest in property in tax lien litigation. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Creamer Industries, 349 F.2d 625 (5th Cir. 1965), (5th Cir. 1965), cert. denied, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). The rule is usually stated that when the priority of a federal tax lien is asserted as against a state-created interest, state law will determine the existence and characteristics of the state lien, but federal law sets standards for priority, and determines whether the status of a holder of a security interest within the meaning of § 6323(a) was attained before notice of tax lien was filed.

■■ In regulating the competition between federal tax liens and non-federal liens, the Supreme Court has ruled that the common law rule of "the first in time is the first in right" will control. United States v. Equitable Life Assur. Soc. of United States, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). However, in determining the priority of liens against a government tax lien, the one which is first in time will be deemed first in right, if and only if, the one first in time is specific and perfected in the federal sense. United States v. Morrison, 247 F.2d 285 (5th Cir. 1957). A lien is not choate or perfected in the federal sense, unless, *inter alia,* (1) it has at least complied with all state requirements for perfection, (2) the identity of the lienor is known, (3) the property subject to the lien is established, and (4) the amount of the lien is established. United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

■ For those classes of persons not protected by § 6323, the "choateness"

test is applied at the time of the tax assessment. For those that are protected, *e. g.* purchasers, holders of a security interest, etc., the test is applied as of the date notice of the tax lien is filed in the appropriate state office. Should the competing lien not meet any one of the choateness standards, it is inchoate. In determining the priority of a federal tax lien over competing liens, there has been a persistent application of the "choate lien test," first in insolvency cases, then in statutory lien cases, and finally in non-statutory contractual lien cases. United States v. Bond, 279 F.2d 837 (4th Cir. 1960). Even though prior in time, an inchoate lien is inferior to a federal tax lien. Fore v. United States, 339 F.2d 70 (5th Cir. 1964), cert denied, 381 U.S. 912, 85 S.Ct. 1532, 14 L.Ed.2d 433 (1965). However, a choate state-created lien will take priority over later federal tax liens. United States v. Pioneer Am. Ins. Co., *supra.*

In the present case, defendant claims the status of a mortgagee or, under the amended statute, a holder of a security interest. Under state law, a contractual landlord's lien such as the one involved here has been held to have the same status as a chattel mortgage. Shwiff v. City of Dallas, 327 S.W.2d 598 (Tex.Civ.App. 1959), writ ref. The state law requires that a chattel mortgage must be filed in the office of the county clerk in the county where the property is situated before it is valid as against creditors or subsequent lien holders. Tex.Rev.Civ. Stat.Ann. Art. 5490 (1947); Tex.Rev.Civ. Stat.Ann. Art. 5498 (1917).

■ Defendant states that the statutes of the State of Texas do not require the recording of a lease. This is quite correct. Defendant also argues that the basic purpose of the recording statutes is to give notice to intervening third parties of the existence of a prior claim or lien in order that these parties will not

2. Prior to 1966, the protected classes were mortgagees, pledgees, purchasers, and judgment creditors. The change in the statute did not affect the lien in question

here. The statutory change did not aid the statutory landlord's lien either. See 77 Yale L.J. 228, 232, Note 32.

be misled to their detriment; that the government would not have acted differently if the lien in question had been recorded. While this may be true, it is almost black letter law that the federal government, like a private judgment creditor, must depend upon record title of property for the satisfaction of its lien. Parker Square State Bank v. Triangle Supply Co., 364 S.W.2d 418 (Tex.Civ.App.1963) writ refused, *n.r.e.;* Underwood v. United States, 118 F.2d 760, 761 (5th Cir. 1941); United States v. Creamer Industries, 349 F.2d 625 (5th Cir. 1965); Uhlhorn v. Owens, 211 F. Supp. 798 (S.D.Tex.1962).[3]

It has already been held in this district that a contractual landlord's lien should be filed as a chattel mortgage to entitle it to priority over another perfected lien. In re Allen, 92 F.Supp. 717 (S.D.Tex.1950). Defendant does not dispute the fact that the contractual landlord's lien at issue here was never filed under the state chattel mortgage recording statute. Therefore, having failed to comply with the state requirements for perfection, the lien is inchoate and all fully perfected liens will take priority over it. Since the contractual landlord's lien is inchoate, the bank is not entitled to the status of a holder of a security interest within the meaning of Section 6323(a) of the Internal Revenue Code of 1954. Fore v. United States, supra.[4] The federal tax liens were fully perfected when assessed and the filing of notice had taken place. Therefore, the federal tax liens are entitled to priority over the contractual landlord's lien of defendant bank.

Counsel for the government will submit an appropriate order.

The Clerk shall file this memorandum and order and sent copies to counsel of record.

3. See the dissenting opinion of Chief Judge Brown in United States v. Creamer Industries, supra, and Note, 20 Sw.L.J. 186 (1966) for criticism of this rule.

4. Had the statutory lien not been waived, it too would fail the choateness test. United States v. Leventhal, 114 U.S.App. D.C. 340, 316 F.2d 341 (1963).